**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5588-18

BUILDERS LEAGUE OF
SOUTH JERSEY,

     Plaintiff-Respondent,

v.

BOROUGH OF
HADDONFIELD,

     Defendant-Appellant.

_____

Argued February 1, 2021 – Decided March 3, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4632-17.

Mario A. Iavicoli argued the cause for appellant.

Richard J. Hoff Jr., argued the cause for respondent (Bisgaier Hoff, LLC, attorneys; Richard J. Hoff Jr. and Danielle Novak Kinback, on the brief).

Michael G. Sinkevich argued the cause for amici curiae New Jersey Future, Association of New Jersey Environmental Commissions, The Watershed Institute,

and Sustainable Jersey (Lieberman Blecher & Sinkevich, PC, attorneys; Michael G. Sinkevich, of counsel and on the brief; C. Michael Gan, on the brief).

PER CURIAM

Defendant Borough of Haddonfield (Haddonfield) appeals from the following orders:  a May 2, 2018 order denying Haddonfield's first motion for summary judgment or transferring the matter to the New Jersey Department of Environmental Protection (DEP) in the alternative; a February 8, 2019 order denying Haddonfield's second motion for summary judgment or transferring the matter to the DEP; a July 10, 2019 order granting the summary judgment to plaintiff Builders League of South Jersey (BLSJ)[1] and denying Haddonfield's cross-motion for reconsideration; and an August 2, 2019 denying Haddonfield's request for a stay.[2]

This appeal involves the BLSJ's challenge to Haddonfield's adoption of Ordinance § 135-92 (Ordinance), governing stormwater management in the

---

[1]  The BLSJ is a trade organization whose members are involved in the construction of single-family and two- family homes in South Jersey.

[2]  Haddonfield's notice of appeal listed all four orders.  However, its merits brief addressed only the February 8, 2019 and July 10, 2019 summary judgment orders.  Haddonfield failed to brief issues related to denial of its motions for reconsideration and a stay.  Thus, we deem these issues waived.  See Midland Funding LLC v. Thiel, 446 N.J. Super. 537, 542 n.1 (App. Div. 2016).

A-5588-18

municipality.  The BLSJ claimed the Ordinance was invalid because it subjected new home construction, including single-family and two-family homes, to a review process contrary to State statutory and regulatory authority.  The New Jersey Future, Association of New Jersey Environmental Commissions, the Watershed Institute, and Sustainable New Jersey, participating as amici curiae on appeal, join in Haddonfield's arguments supporting the validity of the Ordinance.  We affirm the February 8, 2019 and July 10, 2019 orders for the reasons expressed by Judge Deborah Silverman Katz.

The parties are familiar with the fact-findings in  Judge Silverman Katz's written and oral decisions, specifically her forty-three-page, comprehensive written opinion dated February 8, 2019.  We provide some brief background on various statutory and regulatory provisions governing stormwater management within the State.

The New Jersey Constitution authorizes the Legislature to regulate land use.  N.J. Const. Art. IV, § 6, ¶ 2.  The Legislature delegated its authority to regulate land use to municipalities under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136.  Municipalities are required to strictly conform to the MLUL.  See N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 449, 452 (2009).

The MLUL authorized the DEP to adopt regulations governing municipal stormwater management plans. N.J.S.A. 40:55D-93 and -99. Each municipality must adopt a stormwater ordinance in compliance with the DEP's regulations. N.J.A.C. 7:8-4.1 to -4.6.[3]

The DEP's stormwater regulations applied to "major developments," which were defined as follows:

> [A]ny "development" that provides for ultimately disturbing one or more acres of land or increasing impervious surface by one-quarter acre or more. Disturbance for the purpose of this rule is the placement of impervious surface or exposure and/or movement of soil or bedrock clearing, cutting, or removing vegetation. Projects undertaken by any government agency which otherwise meet the definition of "major development" but which do not require approval under the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., are also considered "major development."
>
> [N.J.A.C. 7:8-1.2 (2020).]

A "development" is defined as:

> [T]he division of a parcel of land into two or more parcels, the construction, reconstruction, conversion, structural alteration, relocation or enlargement of any building or structure, any mining excavation or landfill, and any use or change in the use of any building or other

---

[3] The DEP promulgated a Model Municipal Stormwater Control Ordinance (Model Ordinance) to guide municipalities in enacting local stormwater management ordinances.

A-5588-18

structure, or land or extension of use of land, for which permission is required under the Municipal Land Use Law, N.J.S.A.-1 et seq.

[Ibid.]

In 1993, the Legislature amended the MLUL by enacting the Site Improvement Standards Act (Act), N.J.S.A. 40:55D-40.1 to -40.7, to "replace the 'multiplicity of standards for . . . site improvements' that existed throughout the State with 'a uniform set of technical site improvement standards for land development.'" Northgate Condo. Ass'n, Inc. v. Borough of Hillsdale Planning Bd., 214 N.J. 120, 143 (2013) (citing N.J.S.A. 40:55D-40.2). The Act and subsequently adopted standards were intended to "reduce housing costs by facilitating the approval process for new residential developments" and establish "a uniform set of technical site improvement standards for streets, roads, parking facilities, sidewalks, drainage structures, and utilities." N.J. State League of Muns. v. Dep't of Cmty. Affs., 158 N.J. 211, 217-18 (1999).

In accordance with the Act, the New Jersey Department of Community Affairs implemented regulations, known as the Residential Site Improvement Standards (RSIS). See N.J.A.C. 5:21-1.1 to -8.1. The RSIS applied to "site improvements carried out or intended to be carried out or required to be carried out in connection with any application for residential subdivision, site plan

approval, or variance before any planning board or zoning board of adjustment . . . ."  N.J.A.C. 5:21-1.5.  The standards pertaining to stormwater management are set forth at N.J.A.C. 5:21-7.1 to -7.9.  Like the MLUL and the DEP regulations, the RSIS only applies to "major developments."

Significantly, "[t]he RSIS governs all residential site improvements in the State, superseding any contrary requirements that might be found in municipal ordinances."  Northgate Condominium Ass'n, Inc., 214 N.J. at 143-44 (citing N.J.A.C. 5:21-1.5(a)-(b)).  The MLUL expressly provides the RSIS "shall supersede any site improvement standards incorporated within the development ordinances of any municipality . . . ."  N.J.S.A. 40:55D-40.5.

The DEP's Model Ordinance offers guidance to municipalities adopting stormwater management ordinances.  The Model Ordinance states:

> (1) This ordinance shall be applicable to all site plans and subdivision for the following major developments that require preliminary or final site plan or subdivision review:
>
> > (a) Non-residential major developments; and
> >
> > (b) Aspects of residential major developments that are not pre-empted by the Residential Site Improvement Standards at N.J.A.C. 5:21.
>
> (2) This ordinance shall also be applicable to all major developments undertaken by [insert name of municipality].

6

[(emphasis added).]

In contrast, Haddonfield's Ordinance reads:

(a) This section shall be applicable to all site plans or subdivisions that require site plan review and the following:

[1] Nonresidential developments; and

[2] Aspects of residential developments that are not preempted by the Residential Site Improvement Standards at N.J.A.C. 5:21.

(b) This section shall also be applicable to all projects undertaken by the Borough of Haddonfield.

(c) All new homes and commercial buildings requiring a building permit issued by the Borough of Haddonfield.

Unlike the Model Ordinance, Haddonfield's Ordinance applied to "all new homes and commercial buildings" and was not limited to "major developments."

The BLSJ asserted that the Ordinance, contrary to the MLUL and the RSIS, required stormwater plans be reviewed by a municipal official who "shall consult the engineer retained by the Borough, the Planning Board and/or Zoning Board (as appropriate) to determine if all of the checklist requirements have been satisfied and to determine if the project meets the standards set forth in this section." Haddonfield's requirements for stormwater review were extensive and

A-5588-18

included the following information to be reviewed by a "municipal official" prior to all new home construction: a topographic base map; environmental site analysis; project description and site plan(s); land use planning and source control plan; stormwater management facilities map; calculations; and maintenance and repair plan.

Because the MLUL provides "detached one or two dwelling-unit buildings shall be exempt from . . . site plan review and approval," N.J.S.A. 40:55D-37(a), Haddonfield avoided use of the word "site plan review and approval" in the Ordinance. Absent the Ordinance, a permit to construct a single-family or two-family home would issue if, after review by the municipal construction official, the permit applicant complied with the municipal zoning provisions and applicable construction codes, including a proper drainage plan and elevation to minimize flooding. See N.J.S.A. 52:27D-130 and -131(a); N.J.A.C. 5:23-2.15A(b)3.iv. Under the Ordinance, an individual seeking to build a single-family or two-family home in Haddonfield had to undergo a review by a municipal engineer, in addition to the construction official, and post a bond for engineering professional review fees.

The BLSJ argued the Ordinance required submission and examination of items traditionally associated with site plan review and approval. Therefore, the

BLSJ asserted the Ordinance was ultra vires Haddonfield's authority and contrary to the MLUL, the RSIS, and the Model Ordinance.

In December 2017, the BLSJ filed an action in lieu of prerogative writs, challenging the Ordinance. Shortly after filing its answer, Haddonfield moved for summary judgment or, in the alternative, a transfer of the matter to the DEP. The BLSJ opposed the motion. Because the case was in the early stage of the litigation, Judge Silverman Katz denied Haddonfield's motion without prejudice, finding "there was a material dispute of fact as to the authority of [Haddonfield] to enact the Ordinance in its present form." In the event Haddonfield renewed its motion for summary judgment at the conclusion of discovery, the judge invited Haddonfield to provide specific legal authority for transferring the matter to the DEP.

After discovery, Haddonfield renewed its motion for summary judgment. The BLSJ again filed opposition. After hearing oral argument, Judge Silverman Katz denied summary judgment in a February 8, 2019 order. The judge set forth detailed findings of fact and comprehensive conclusions of law in a written decision attached to the order denying Haddonfield's motion.

Judge Silverman Katz concluded the Ordinance was invalid. She found the Ordinance, essentially, imposed site plan review for the construction of

9

single-family and two-family homes contrary to N.J.S.A. 40:55D-37(a). While the term "site plan review" was not contained in the Ordinance, the judge held the "distinction between the type of site plan review prohibited by the MLUL and the site plan review mandated by the Ordinance" was "a distinction without a difference." Judge Silverman Katz found "[t]he plain reading [of the Ordinance] indicates that the site plan review . . . is performed by the Planning Board, the Zoning Board, or their designees, the very review from which the MLUL expressly exempts one- and two-unit dwellings." Because the Ordinance contravened the MLUL exemption for site plan review and approval of single-family and two-family homes, the judge concluded the Ordinance was "unreasonable and therefore invalid."

Judge Silverman Katz also rejected Haddonfield's argument it had the authority to adopt an ordinance imposing stricter requirements than the Model Ordinance. The judge found the Ordinance invalid because "a municipal ordinance is nevertheless limited by the enabling legislation, in this case, the MLUL." She concluded "[t]he MLUL is violated if the RSIS is violated," citing N.J.A.C. 5:21-1.9(a)[4] and <u>Northgate Condominium Association, Inc. v. Borough</u>

---

[4] N.J.A.C. 5:21-1.9(a) of the RSIS provides:

of Hillsdale Planning Board. The judge explained the RSIS imposes stormwater management limited to "major developments," N.J.A.C. 5:21-7.1(a), but the Ordinance compelled all residential developments, including single-family and two-family homes, to comply with its stormwater management requirements.

Additionally, Judge Silverman Katz rebuffed Haddonfield's contention that stormwater management within the municipality had to be accomplished through adoption of an ordinance rather than another mechanism. She found stormwater discharge could be accomplished by amending Haddonfield's existing zoning laws. In addition, the judge noted several neighboring municipalities "adopted stormwater ordinances that comply with the RSIS and the DEP Model Ordinance." Judge Silverman Katz further concluded "the common law theories of trespass and nuisance provide[d] yet another alternative by which [Haddonfield] may regulate stormwater discharge."

Based on the judge's rejection of Haddonfield's motion for summary judgment, on May 10, 2019, the BLSJ moved for summary judgment.

Where any site improvement is required to meet any part of these rules pursuant to the requirements of any ordinance adopted pursuant to N.J.S.A. 40:55D-37, . . . then any failure of any person to construct such site improvements in accordance with the requirements of these rules shall constitute a violation of the Municipal Land Use Law . . . .

Haddonfield cross-moved for reconsideration of its motion for summary judgment. The motions were argued on June 7, 2019. Judge Silverman Katz granted the BLSJ's motion for summary judgment, denied Haddonfield's cross-motion for reconsideration, and issued a July 10, 2019 order memorializing her decisions.

Haddonfield moved to stay the trial court's order pending appeal. In an August 2, 2019 order and accompanying written decision, Judge Silverman Katz denied the stay request.

On appeal, Haddonfield argues the judge erred in finding the Ordinance invalid as contrary to, and inconsistent with, statutory and regulatory laws of this State. It also contends the judge erred in adjudicating the BLSJ's challenge to the Ordinance as an action in lieu of prerogative writs in the Superior Court of New Jersey instead of transferring the matter to the DEP. We disagree with Haddonfield's arguments for the comprehensive reasons expressed by Judge Silverman Katz in her February 8, 2019 written decision and June 7, 2019 oral decision. We add only the following comments.

Our standard of review from a trial court's determination regarding the validity of a municipal ordinance is well-settled. "[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the

12

same standards as the trial court."  Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004).  While ordinances are presumed valid and reasonable, "[t]he presumption may be overcome . . . by a clear showing that the local ordinance is arbitrary and unreasonable."  Quick Chek Food Stores v. Springfield Twp., 83 N.J. 438, 447 (1980) (quoting Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 298-99 (1976)).  An ordinance may also be declared "invalid if in enacting the ordinance the municipality has not complied with the requirements of [a] statute."  Riggs v. Long Beach Twp., 109 N.J. 601, 611 (1988) (citing Taxpayer Ass'n of Weymouth Twp. v. Weymouth Twp., 80 N.J. 6, 21 (1976)).

Our Supreme Court has "recognized that one of the purposes for the enactment of the MLUL was the Legislature's intention to create 'statewide uniformity of process and practices in the areas of zoning and land use.'"  Northgate Condominium Ass'n, Inc., 214 N.J. at 137 (quoting Rumson Estates, Inc. v. Mayor & Council of Fair Haven, 177 N.J. 338, 356 (2003)).  "[T]o effectuate the legislative intent to create statewide uniformity . . . the requirements established in the MLUL are to be applied strictly."  Ibid. (citing Manalapan Holding Co. v. Manalapan Planning Bd., 92 N.J. 466, 482 (1983)).  "The presumption of the validity of local legislative action is constrained by the

obvious understanding that '[a] statute has supremacy over an ordinance,' and 'a local municipality is but a creature of the State, capable of exercising only those powers granted by the Legislature.'" Fraternal Order of Police, Newark Lodge No. 12 v. City of Newark, 459 N.J. Super. 458, 489 (App. Div. 2019) (internal citations omitted). Thus, "[a] municipality's power to effectuate planning schemes . . . must be exercised in strict conformity with the delegating enactments—the MLUL." New Jersey Shore Builders Ass'n, 401 N.J. Super. at 161 (quoting Toll Bros., Inc. v. Bd. of Chosen Freeholders, Cnty. of Burlington, 194 N.J. 223, 243 (2008)).

We agree with Judge Silverman Katz that Haddonfield's Ordinance conflicted with the pronouncements in the MLUL and the RSIS by applying stormwater review to single-family and two-family homes. Nothing in the DEP's stormwater management regulations allowed Haddonfield to violate the MLUL or the RSIS by adopting an ordinance imposing stricter requirements than the requirements under the enabling legislation. In fact, during the comment period prior to the DEP's adoption of stormwater management regulations, the agency explained "[a] single-family dwelling on a single-family lot would not be subject to the requirements of [the regulations] unless it falls under the definition of 'major development.'" Because the Ordinance exceeded

Haddonfield's authority under the MLUL, Judge Silverman Katz properly concluded the Ordinance was invalid.

We next consider Haddonfield's contention the judge erred in declining to transfer the action to the DEP for adjudication based on the agency's special expertise. We again agree with Judge Silverman Katz that Haddonfield's argument is flawed. Although the DEP issued a municipal storm sewer system permit, triggering Haddonfield's requirement to adopt a stormwater management ordinance, the DEP did not prepare or adopt the Ordinance. The DEP was established to "adopt regulations to protect the public safety with respect to storm water detention facilities," not to determine the validity of municipal ordinances. N.J.S.A. 40:55D-95.1. The BLSJ's challenge was not directed to the validity of a regulation or any act by the DEP. Rather, the BLSJ argued the Ordinance was inconsistent with State law. See Alexander's Dept. Stores of New Jersey, Inc. v. Borough of Paramus, 125 N.J. 100, 103 (1991) (holding a party could not be barred "from bringing suit in the Law Division challenging municipal actions not directly related to [agency] proceedings themselves"). A challenge to the validity of the Ordinance by way of an action in lieu of prerogative writs is squarely within the purview of the Law Division of the

Superior Court.  Thus, no transfer to the DEP was required to adjudicate that issue.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16